# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAIR NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2016- |
| | ) | |
| vs. | ) | |
| | ) | |
| HOSTPAIR LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, pair Networks, Inc. ("pair Networks"), by and through its legal counsel, avers as follows:

### Statement of the Case

1.      This is an action brought by pair Networks, Inc. (the use of the lower case "p" is intentional - hereinafter "pair Networks") arising out of the Defendant's operation of http://www.hostpair.com/ offering web hosting and related services. As shown below, this activity infringes on pair Networks' U.S. trademark registrations, most of which are incontestable and all of which pre-date when Defendant began using the infringing PAIR mark.   All of Defendant's past, current, and future unauthorized use has, is, and will dilute pair Networks' federally-registered and world famous PAIR Family of Marks in violation of

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  By making unauthorized use, in interstate and intrastate commerce, of the mark "PAIR" , "HOSTPAIR", and @hostpair on Facebook and Twitter, and or variations thereof in connection with goods and services that are not part of pair Networks or otherwise affiliated with, endorsed, or sponsored by pair Networks, Defendant violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff pair Networks seeks an injunction preventing further use of PAIR, HOSTPAIR, @hostpair on Facebook and Twitter and http://www.hostpair.com/ and such other relief as this Court deems appropriate.

### The Parties

2.      pair Networks, Inc. is a Pennsylvania corporation having its principal place of business at 2403 Sidney Street, Suite 210, Pittsburgh, Pennsylvania 15203.  pair Networks has registered the Internet domain names *pair.com*, *pair.net*, and *pair.org*, and *pairhost.com* among many other Internet domain names incorporating the pair name. Plaintiff uses these domain names in providing web hosting for others, domain name registration for others, providing rack space, electricity, broadband connections, and technical support for customer-owned servers at a location different than the customer's place of business, and providing software related to such services to others on the Internet throughout the United States and for customers throughout the World.

3.      HOSTPAIR LLC ("Defendant") is Delaware Limited Liability Company with a registered business address of c/o Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, Delaware 19958. Defendant has registered the domain name hostpair.com in connection with web hosting and related services.

**Jurisdiction**

4.      The First, Second, and Third Causes of Action arise under the United States

Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1051-1127.  Jurisdiction in this

Court is proper pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court

also has subject matter jurisdiction over the Fourth Cause of Action for state and common

law claims of trademark infringement and unfair competition pursuant to 28 U.S.C. §§ 1338

and 1367 (supplemental jurisdiction) in that the claims are joined with a substantial and

related claim under the Lanham Act.

5.      This Court may exercise personal jurisdiction over a non-resident of the State

in which the Court sits to the extent authorized by the state's laws.  Fed.R.Civ.P. 4(e).

Pennsylvania authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons.

Stat §5322 (a) which provides in pertinent part:

> A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth

> \*\*\*

> Without excluding other acts which may constitute transacting business for the purpose of this paragraph:

> \*\*\*

> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit…

> \*\*\*

> (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth.

> \*\*\*

> (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit.

6.      In particular, Defendant's numerous violations of the Trademark law occurred in Pennsylvania.  Accordingly, Defendant is properly haled into court in Pennsylvania.

**Venue**

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), in that a substantial part of the events giving rise to the claims occurred in this District and pair Networks is suffering continuing and irreparable harm in this District.

***Common Factual Background***

***The Internet***

8.      The Internet is a world-wide network of computers that interconnects smaller groups of computer networks and sites through which businesses and individuals can communicate with each other.  On the World Wide Web, which is one part of the Internet, information can be presented on pages of graphics and text ("Web Site").  Commercial enterprises or individuals may use such Web Sites to display information about their goods or services, or may purvey other material.

9.      The operation of the Internet is decentralized.  It is accessible to users internationally and is not controlled, owned or administered by any one body.  It would not be technically feasible for a single entity to control or monitor information on the Internet.

10.     Every computer connected to the Internet has a unique, numerical address. These addresses, which are known as Internet Protocol ("IP") numbers, are necessary for computers to communicate with each other over the Internet.  An example of an IP number might be:  98.37.241.30.  Because IP numbers can be cumbersome and difficult for Internet users to remember or use, the IP number system has been overlaid with a more user-friendly

system of domain names.  This system allows Internet addresses to be assigned an

alphanumeric designation--or domain name--correlated to an IP number.

11.     Specialized computers known as "domain name servers" maintain tables

linking domain names to IP numbers.  When connecting one Internet computer to another,

the Internet has been designed automatically to look up the IP number corresponding to the

"domain name" entered by the Internet user.  This system operates invisibly to Internet users.

12.     Internet domain names are of special importance since there is no satisfactory

Internet equivalent to a telephone directory or directory assistance, and domain names can

often be guessed.  A domain name mirroring a corporate name or trademark may be a

valuable corporate asset in facilitating communication with a customer base.  On the other

hand, a domain name incorporating the corporate name or trademark of another entity creates

substantial dilution, blurring, tarnishment, and consumer confusion since an Internet user

may reasonably assume that the domain name is sponsored by, affiliated with, or somehow

approved by the owner of the corporate name or trademark.

13.     Domain names are composed of at least two parts, which are called "domain

levels."  Each domain level is separated by a period, which is referred to as a "dot."  Top

level domains on the Internet are referred to by their Internet "zone" designations, such as

".com," ".org," ".net," ".gov," ".edu," ".mil" etc.  These zones or top level domains are found

to the right of the dot.  "Second level" domains, which are commonly referred to as the

"domain name," are those characters immediately to the left of the top level domain, such as

"PAIR" in the domain name "PAIR.COM", "PAIRHOST.COM" or "HOSTPAIR.COM".

14.     The uniqueness of Internet addresses is ensured by the registration services

provided by registrars of domain names.  Domain names ending with .biz, .com, .info, .name,

.net or .org can be registered through many different registrars that compete with one another. A user who registers a domain name becomes an "applicant" or "registrant" of the domain name.

15.     In this case, the infringing domain name hostpair.com is administered by the PDR Ltd. d/b/a PublicDomainRegistry ("PDR") Domain Registry which requires its applicants to comply with the WIPO ("World Intellectual Property Organisation") rules for registration and domain name disputes.

16.     In registering an Internet domain name, an applicant or registrant in this case DEFENDANT , HOSTPAIR LLC, located anywhere in the world, contacts a registrar and enters into a Registration Agreement with that registrar.  For example, By registering a domain name with PDR, the Defendant  agreed to be bound by a Registration Agreement and Domain Name Dispute Policy which provide in pertinent part:

> If you have an active domain name which is registered under PublicDomainRegistry through any of our partners, you are governed by the terms in this contract.

(PDR Registrar-Registrant Agreement, Pre-Amble, ¶1)

> You agree to be bound by the current Uniform Domain Name Dispute Resolution Policy, available at http://www.icann.org/udrp/udrp.htm that is incorporated herein and made a part of this Agreement by reference.

(PDR Registrar-Registrant Agreement , Appendix C, ¶2, Domain Dispute Policy)

> Uniform Domain Name Dispute Resolution Policy ("UDRP"), identified on ICANN's website http://www.icann.org/en/help/dndr/udrp/policy, has been adopted by all ICANN-accredited Registrars to resolve dispute proceedings arising from alleged abusive registrations of domain names (for example, cybersquatting). Holder of the trademark can excercise their right by filing a UDRP case with any of ICANN's UDRP Service Providers listed at http://www.icann.org/dndr/udrp/approved-providers.htm to challenge ownership of the gTLD domain names.

(PDR Registrar-Registrant Agreement, ¶5.1, Domain Dispute Process)

The Registrant agrees that, if the use of the Order is challenged by a third party, the Registrant will be subject to the provisions of the appropriate Dispute policy for that Order as mentioned in the appropriate Appendix in effect at the time of the dispute. The Registrant agrees that in the event a dispute arises with any third party, the Registrant will indemnify and hold Registrar, Registry Operator and Service Providers harmless in all circumstances, and that Registrar, Registry Operator and Service Providers will have no liability of any kind for any loss or liability resulting from any such dispute, including the decision and final outcome of such dispute. If a complaint has been filed with a judicial or administrative body regarding the Registrant's use of the Order, the Registrant agrees not to make any changes to the Order without Registrar's prior approval. Registrar may not allow the Registrant to make changes to such Order until Registrar is directed to do so by the judicial or administrative body.

(PDR Registrar-Registrant Agreement, ¶5.2, Doman Dispute Process)

Thus, by various agreements PDR (the registrar for hostpair.com) exercises control over the offending domain name hostpair.com and in accordance with those agreements will abide by any order this court issues in conjunction with the lawsuit brought by pair.  True and correct copies of the Registrar-Registrant Agreement (omitting other Top Level Domain Name Specific Conditions set forth in various Appendices), Registrar-Registrant Agreement Appendix C - .COM Domain Name Specific Conditions, and the ICANN Dispute Resolution Policy, are attached hereto, and incorporated herein by reference, as Exhibits 1, 2 and 3, respectively.

17.    In addition to the infringing domain name www.hostpair.com, Defendant also registered and is using the username @hostpair for Facebook and Twitter, which also infringes, dilutes, blurs confuses and otherwise violates Plaintiff's valuable trademark rights in its PAIR Family of Marks.

18.    According to the Twitter Rules:

We believe that everyone should have the power to create and share ideas and information instantly, without barriers. In order to protect the experience and safety of people who use Twitter, there are some limitations on the type of content and

behavior that we allow. All users must adhere to the policies set forth in the Twitter Rules. Failure to do so may result in the temporary locking and/or permanent suspension of account(s).

Please note that we may need to change these rules from time to time and reserve the right to do so. The most current version will always be available at twitter.com/rules.

**Content Boundaries and Use of Twitter**

In order to provide the Twitter service and the ability to communicate and stay connected with others, there are some limitations on the type of content that can be published with Twitter.

**Trademark**: We reserve the right to reclaim user names on behalf of businesses or individuals that hold legal claim or trademark on those user names. Accounts using business names and/or logos to mislead others will be permanently suspended.

19.     According to the Twitter's Trademark Policy:

**What is a Trademark Policy Violation on Twitter?**

Using a company or business name, logo, or other trademark-protected materials in a manner that may mislead or confuse others with regard to its brand or business affiliation may be considered a trademark policy violation.

**How Does Twitter Respond To Reported Trademark Policy Violations?**

When we receive reports of trademark policy violations from holders of federal or international trademark registrations, we review the account and may take the following actions:

When there is a clear intent to mislead others through the unauthorized use of a trademark, Twitter will suspend the account and notify the account holder.

When we determine that an account appears to be confusing users, but is not purposefully passing itself off as the trademarked good or service, we give the account holder an opportunity to clear up any potential confusion. We may also release a username for the trademark holder's active use.

We are responsive to reports about confusing or misleading Promoted Tweet and Promoted Trend copy, as well as Promoted Account profile information. For more information, please visit our Trademark Policy for Promoted Products.

***

Thus, Twitter requires its users to comply with trademark law and is responsive to

complaints and will suspend an account and/or release an account to a trademark holder

when the username violates trademark rights.  (true and correct copies of Twitters' Rules and

Trademark Policy are attached hereto and incorporated herein by reference as Exhibit 4).

20.     According to the Facebook Rules:

**Protecting Other People's Rights**

**We respect other people's rights, and expect you to do the same**.

1.      You will not post content or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law.
2.      We can remove any content or information you post on Facebook if we believe that it violates this Statement or our policies.
3.      We provide you with tools to help you protect your intellectual property rights. To learn more, visit our How to Report Claims of Intellectual Property Infringement page.
4.      If we remove your content for infringing someone else's copyright, and you believe we removed it by mistake, we will provide you with an opportunity to appeal.
5.      If you repeatedly infringe other people's intellectual property rights, we will disable your account when appropriate.

*** 

**Termination**

If you violate the letter or spirit of this Statement, or otherwise create risk or possible legal exposure for us, we can stop providing all or part of Facebook to you. We will notify you by email or at the next time you attempt to access your account. You may also delete your account or disable your application at any time. In all such cases, this Statement shall terminate, but the following provisions will still apply: 2.2, 2.4, 3-5, 9.3, and 14-18.

***

21.     According to the Facebook Intellectual Property Rules:

**About Intellectual Property**

Facebook is committed to helping people and organizations protect their intellectual property rights. The Facebook Statement of Rights and Responsibilities does not allow posting content that violates someone else's intellectual property rights, including copyright and trademark

***

Accordingly, Facebook prohibits users from infringing on other's trademarks and will disable an offending user's account for such violation (A true and correct

copy of Facebook's Rules and Trademark Policy is attached hereto and incorporated

herein by reference as Exhibit 5).

*Plaintiff pair Networks' Business*

22.    Plaintiff offers its services under, *inter alia*, its marks "PAIR NETWORKS,"

"PAIR", "PAIR.COM," "PAIR.NET," and "PAIR.ORG," "PAIRHOST.COM",

"PAIRHOST.NET," and "PAIRHOST.ORG".  These additional members of the PAIR

Family of Marks have been extensively and continually promoted internationally and within

the United States since at least the founding of Plaintiff in 1998.

23.    Since pair Networks pioneered the field of web hosting in 1995, it has grown

to host hundreds of thousands of web sites and over one hundred thousand pairList mailing

lists from customers from over 100 different countries. pair Networks has been and continues

to be a leader in the web hosting field.  It is now one of the largest privately-held and

independently-operated web hosting providers in the world.

24.     pair Networks hosts hundreds of thousands of web sites.  It has thousands of

Web servers located in Pennsylvania, Ohio, and Nevada.  The servers of pair Networks have

over 1(one) Petabyte (PB) of storage connected to the Internet and on a typical day deliver

more than one billion Web hits per day via their servers.  By virtue of the Internet, the

significant majority of pair's customers come into the pair's family through its web sites,

*pair.com*, *pair.net*, and *pair.org*, or other web sites incorporating the pair name.

25.    As many entities desire to create a presence on the Internet, they are

discovering that, for a variety of reasons, they do not wish to commit the resources necessary

to have their own equipment host their domain name.  Thus, a market has developed for

providing the necessary equipment and expertise to relieve the owners of a domain name from the burdens of creating a presence on the Internet.  This is part of a growing industry shift to manage software on behalf of corporate customers, in effect renting the programs out as monthly subscriber services and relieving customers of the need to keep large in-house technical staffs.

26.     Substantial amounts of time, effort, and money have been expended in ensuring that the public associates the PAIR Family of Marks exclusively with Plaintiff.  As a result of this time, effort, and money invested, Plaintiff has achieved a reputation for providing quality services and information in the field of web hosting.  Plaintiff enjoys a substantial demand for and use of such services as well as tremendous goodwill in the PAIR Family of Marks.

*pair Networks' Famous Family of PAIR Marks*

27.     pair owns the following U.S. Registered trademarks:

| Mark | Int'l Class | Reg. Date | Registration No. |
|---|---|---|---|
| PAIR NETWORKS | 42 | 07/14/1998 | Reg. No. 2,172,950 |
| PAIR NETWORKS and Design | 42 | 09/18/2001 | Reg. No. 2,490,582 |
| PAIRNIC | 42 | 01/08/2002 | Reg. No. 2,527,469 |
| PAIRLIST | 38 | 07/23/2002 | Reg. No. 2,597,075 |
| PAIRLITE | 42 | 01/08/2008 | Reg. No. 3,366,746 |
| PAIRLITE and Design | 42 | 04/08/2008 | Reg. No. 3,410,595 |
| PAIRCOLO | 42 | 03/10/2009 | Reg. No. 3,587,926 |
| PAIRVPS | 42 | 02/23/2010 | Reg. No. 3,752,227 |
| PAIR | 42 | 03/16/2004 | Reg. No. 2,822,208 |

for among other things: "providing web page hosting services on a global computer

information network," "providing domain name registration services through a global

computer network," "colocation services," and "providing bulk email list hosting services" (collectively the "PAIR" family of marks).These registrations are valid, unrevoked, subsisting, and constitute *prima facie* evidence of pair Networks' exclusive ownership of these Marks.  True and correct copies of the print outs from the U.S. Patent and Trademark Office web site are attached to the Complaint as Exhibits 6-14.

28.    pair Networks owns common law rights to additional marks in the PAIR Family of Marks, the dominant portion of which are PAIR.

29.    pair Networks' trademarks all contain the recognizable common characteristic of being composed of the word PAIR, alone or with other words.

30.    Due to long, extensive and substantially exclusive use by Plaintiff of its trademarks containing the common characteristic of the word PAIR, the public has come to associate not only Plaintiff's trademarks with Plaintiff and its goods and services but has also come to associate the common characteristic of the word PAIR with Plaintiff and its goods and services

31.    pair Networks uses its PAIR Family of Marks on a variety of goods and services outside of the services set forth in its U.S. Registrations, including software applications, clothing and tote bags.  See, for example, Exhibit 15, attached hereto and incorporated herein by reference.

32.    pair Networks has used its PAIR Family of Marks and advertised them in promotional materials and/or used them in everyday sales activities in such a manner as to create common exposure and thereafter recognition of common ownership based upon their common formative PAIR.

*Ongoing Enforcement of the Famous PAIR Family of Marks*

33.     Plaintiff pair Networks has invested substantial resources to aggressively protect its invaluable PAIR Family of Marks.

34.     pair Networks regularly sends cease and desist letters to any third parties using the PAIR formative to market goods or services.

35.     Over the years, pair Networks has filed trademark infringement lawsuits against third parties who were using the formative PAIR whether or not closely related to the goods and services with which the PAIR Family of Marks is associated and marketed.

36.     These enforcement efforts have been met with great success.

37.     The PAIR marks have been recognized as famous both nationally and internationally.

38.     For example, in *Pair Networks, Inc. vs. Joaquim Rodrigues* (W.D. Pa.) Civil Action No. 2010-01122, Judge Lancaster entered a decision and order finding that "pair Networks marks are nationally and internationally known and associated with pair Networks' products and services, and are thus 'famous' under 15 U.S.C. §1125(d)."  (See copy of October 8, 2010 Decision and Order, attached hereto as Exhibit 16 and incorporated herein by reference.)

39.     Accordingly, Judge Lancaster entered an order prohibiting the defendant from "using the word 'pair' in a trademark sense, in any language, or though synonym or homonym, in connection with any Internet service provider, application service provider, software, or Internet related service." *Id.* at 5.

40.    Other courts have also entered orders confirming the fame of the PAIR marks. For instance, in *pair Networks, Inc. v PEAR.NET*, Civil Action No. 00-301-A, the Eastern District of Virginia specifically found that the PAIR marks were "nationally and internationally known and associated with pair Networks' products and services."  (See copy of July 21, 2000 Slip Op. at p.11 (E.D. Va. 2000), attached hereto as Exhibit 17 and incorporated herein by reference.)

41.    A similar order was entered in the case of *pair Networks, Inc. v. Shiloh Jennings, d/b/a PAIRNET WEB HOSTING.*  See Order of Court, December 9, 1999 (W.D. Pa. 1999), p.2, a copy of which is attached hereto as Exhibit 18 and incorporated herein by reference. (Defendant is enjoined from using the word "pair" in a trademark sense in connection with software.)

42.    Most recently, in the case of *pair Networks, Inc. v. Lim Cheng Soon*, et. al, Judge McVerry entered a similar order. See Order of Court, February 6, 2013 (W.D. Pa. 2013), p.8, a copy of which is attached hereto as Exhibit 19 and incorporated herein by reference. (Defendant is enjoined from using any domain name that is identical or confusingly similar to pair.com, pair.net, or pair.org.)

### *Policing the United States Patent and Trademark Office for Third Party Filings*

43.    Plaintiff pair Networks' enforcement policy includes reviewing the United States Patent and Trademark Office trademark filing docket, identifying third party applications that might cause confusion in the market place, might dilute the PAIR Family of Marks or might allow a third party to overlap and expand into Plaintiff pair Networks' trade channels and consumer influence regardless of the third party's goods or service.

44.     As an example, this policing activity has been successful in limiting, *inter alia*, the registration of PAIR formative marks for Internet associated computer software and hardware in International Class 009.

45.     Indeed, in International Class 042, there are only 17 registered marks including the formative PAIR.  See August 12, 2016 report from the United States Patent and Trademark Office Trademark Electronic Search System (TESS) attached hereto and incorporated herein as Exhibit 20.  Out of the 17 registered marks, 9 are owned by pair Networks for providing web hosting and related services.  The remaining 8 registered marks are not registered for providing web hosting and related services.

46.     In the case of *pair Networks, Inc. v Lanish Enterprises Limited* (Opposition No. 91178438), decision filed June 18, 2008), the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") sustained pair Networks' opposition of the mark "PAIR & GO" for a myriad of computer hardware and software related goods in international class 009.  A copy of the TTAB decision is attached hereto, and incorporated herein by reference as Exhibit 21.

*Defendant HOSTPAIR LLC's Unauthorized Use of PAIR and @hostpair*

47.     Upon information and belief, subsequent to pair Networks' use of the PAIR Family of Marks, and without the consent of pair Networks, Defendant registered www.hostpair.com on December 12, 2012.  See Exhibit 22 (print-out of whois database record). Indeed, pair Networks has owned the domain name www.pairhost.com since at least December November 22, 2000 (more than a decade before defendant's registration).

48.     Upon information and belief, the owner of www.hostpair.com is HOSTPAIR LLC as set forth in the whois record, above.

49.     The www.hostpair.com domain name is directed to a web site that advertises, promotes and offers defendant's web hosting and related services. A true and correct copy of a printout of the home page associated with www.hostpair.com is attached hereto as Exhibit 23.

50.     On or about July 5, 2016, upon learning of the use of PAIR by Defendant, Plaintiff pair, through its counsel sent a cease and desist letter to Defendant at his registered address as identified in the whois record for www.hostpair.com.  A true and correct copy of the cease and desist letter and proof of delivery is attached hereto as Exhibit 24.

51.     Despite notice that its activities infringe upon Plaintiff's valuable PAIR Family of Marks, Defendant continues to defiantly advertise, promote and offer its web hosting and related services at the www.hostpair.com web site in interstate commerce and using @hostpair for Facebook and Twitter thus violating Plaintiff's valuable trademark rights and causing irreparable harm to Plaintiff.

### First Cause of Action
### Trademark Infringement

52.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 51 of the Complaint as set forth above.

53.     The PAIR Family of Trademarks has been extensively and continually promoted internationally and within the United States, with "PAIR NETWORKS" being promoted since at least the founding of Plaintiff.  Substantial amounts of time, effort, and money have been expended in ensuring that the public associates the PAIR family of trademarks exclusively with Plaintiff.  As a result of this time, effort, and money invested, Plaintiff has achieved a reputation for providing quality services and information in the field of web hosting.  Plaintiff enjoys a substantial demand for and use of such services as well as tremendous goodwill in its trademark.

54.     By virtue of the extensive scope of the consumer uses and the substantial sums spent to promote Plaintiff's PAIR family of trademarks, said names and marks have acquired a strong secondary meaning in the minds of the public and business community, and now uniquely identify Plaintiff's services.  Through widespread and favorable public acceptance and recognition, the PAIR family of trademarks has become an asset of incalculable value as a symbol of Plaintiff's services and goodwill.

55.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits the use in commerce, without the consent of the registrant, of

> …any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...

52.    Defendant's use has caused, and is likely to cause, confusion as to the source, sponsorship, or origin of the products and services offered through the www.hostpair.com.

53.    Among other things, www.hostpair.com confuses Internet users searching for information about pair Networks, and misleads users who are searching for Plaintiff's site, but land on www.hostpair.com.  The www.hostpair.com site hinders pair Networks' own ability to offer its services in commerce over the Internet and is an inevitable source of confusion.  The Defendant thus infringes the federally registered pair Network marks in violation of Section 32(1)(a) of the Lanham Act.

54.    On information and belief, the Defendant's infringement of the PAIR Family of Marks was and is conducted with actual knowledge of the reputation of and goodwill inherent in Plaintiff's marks, and Plaintiff's ownership of said marks.

55.    On further information and belief, and it in light of the cease and desist letter (See Exhibit 24, *supra*), Defendant's unlawful violation of Plaintiff's rights in its trademarks is flagrant and intentional.

56.    As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits.

57.    Plaintiff has no adequate remedy at law for the infringement of its trademarks alleged herein.  Unless Defendant is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

**Second Cause of Action**
**(Federal Dilution)**

58.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 57 of the Complaint as set forth above.

59.     As a direct result of Plaintiff's long and extensive experience, care, and skill in providing web site hosting, domain registration, colocation and related Internet services under the PAIR Family of Marks, Plaintiff's marks have become famous within the meaning of 15 U.S.C. § 1125.

60.     Because Plaintiff's services have gained a reputation for superior quality and excellence, the PAIR Family of Marks (which are always used in connection with pair Networks' services) have gained substantial fame, renown, and good will.

61.     By using the words PAIR and @hostpair the Defendant has caused and continues to cause irreparable injury to and dilution or a likelihood of dilution of the PAIR Family of Marks distinctive quality in violation of pair Networks' rights under 15 U.S.C. § 1125(c).  The Defendant's use of dilutes, blurs, tarnishes, and whittles away the distinctiveness of the PAIR Family of Marks.  The Defendant's use of PAIR and @hostpair further misappropriates the good will of the PAIR Family of Marks.

62.     On information and belief, the Defendant's dilution of the PAIR Family of Marks was and is conducted with actual knowledge of the reputation of and goodwill inherent in Plaintiff's marks, and Plaintiff's ownership of said marks.  On further information and belief, Defendant's unlawful violation of Plaintiff's rights in its trademarks is flagrant and intentional.

63.     As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, and reputation.

64.     Plaintiff has no adequate remedy at law against this dilution of and injury to business reputation.  Unless Defendant is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

### Third Cause of Action
### (Federal Unfair Competition)

65.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 64 of the Complaint as set forth above.

66.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that

Any person who, on or in connection with any goods or services,...uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

67.     Through the acts described above, the Defendant has engaged in statutory unfair competition.  By making unauthorized use, in interstate commerce, of PAIR and @hostpair or variations thereof in connection with services that are not part of pair Networks or otherwise affiliated with, endorsed, or sponsored by pair Networks, the Defendant has used a "false designation of origin" that is likely to cause confusion, mistake, or deception as

to the affiliation or connection of the services offered under PAIR @hostpair with pair

Networks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68.     On information and belief, the Defendant's statutory unfair competition was

and is conducted with actual knowledge of the reputation of and goodwill inherent in

Plaintiff's marks, and Plaintiff's ownership of said marks.  On further information and belief,

Defendant's unlawful violation of Plaintiff's rights in its trademarks is flagrant and

intentional.

69.     As a proximate result of the acts of Defendant as alleged herein, Plaintiff has

suffered and will continue to suffer damage to its business, goodwill, and reputation.

70.     Plaintiff has no adequate remedy at law against this dilution of and injury to

business reputation.  Unless Defendant is enjoined by this Court, Plaintiff will continue to

suffer irreparable harm.

### Fourth Case of Action
### (Unfair Competition)
### 54 Pa. C.S. §1124 and Common Law

71.     Plaintiff re-alleges and incorporates herein by reference the allegations of

paragraphs 1 through 70 of the Complaint as set forth above.

72.     The Count seeks a remedy for the Defendant's multiple acts of trademark

infringement, dilution and unfair competition in violation of the statutory and common law of

the Commonwealth of Pennsylvania.

73.     The Defendant's activities complained of herein constitute the unfair appropriation of the PAIR Family of Marks in the District and the reputation and good will associated therewith.

74.     The Defendant's activities constitute, *inter alia*, unfair competition, infringement of registered and common law trademarks, passing off, deceptive advertising, unfair trade practices, and dilution to the distinctive quality of the PAIR Family of Marks and injury to Plaintiff pair Networks, Inc.'s reputation.

75.     The Defendant's activities have been carried out with bad faith and with full knowledge of Plaintiff pair Networks, Inc.'s valuable and long existent rights in the PAIR Family of Marks.

76.     The Defendant adopted the PAIR and @hostpair names intentionally, in reckless and willful disregard of Plaintiff pair Networks, Inc.'s rights.

77.     The Defendant's complained of activities have caused and will continue to cause damage to the rights of Plaintiff pair Networks, Inc. in its PAIR Family of Marks and to the business reputation and goodwill of pair Networks, in Pennsylvania and elsewhere.

78.     Without the Court's intervention, Plaintiff pair Networks, Inc. will continue to suffer irreparable harm to its business, goodwill, and property for which there is no adequate remedy at law.

79.     Solely because of Defendant HOSTPAIR LLC's conduct and complained of activities, Plaintiff pair Networks, Inc. has suffered actual damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as follows:

1.      That the Defendant discontinues the use of the *hostpair.com* domain name set forth in this Complaint and further be ordered to cooperate in the immediate transfer of such registration rights to pair Networks.

2.      That Defendant, its agents, servants, employees and representatives and all other persons, firms or corporations in active concert or participation with him, be permanently enjoined and restrained from: (1) using in any manner in connection with any of its services, or in connection with any advertising or promotions of such services, the domain name hostpair.com, the word PAIR, and the Facebook and Twitter name @hostpair and any colorable imitation, homonym, or synonym thereof, and (2) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective users of Defendant's services, as to the source of services provided, produced, distributed, sold or offered for sale thereby, or likely to deceive members of the public or the trade, or prospective purchasers, into believing that there is some connection between Defendant and Plaintiff or that Defendant's services are affiliated, distributed, sold or offered for sale with Plaintiff's authorization;

3.      That Defendant, pursuant to 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunction;

4.      That Defendant, pursuant to 15 U.S.C. § 1118, be ordered to deliver up for destruction all media, packages, wrappers, receptacles, and articles in its possession bearing the marks PAIR or HOSTPAIR or @hostpair or any reproduction, counterfeit, copy, or

colorable imitation, homonym, or synonym thereof, and all plates, molds, matrices, and other means of making the same;

5.     That Defendant account for and pay over to Plaintiff all of the profits realized by Defendant, or others acting in concert or participation with Defendant, from the sale and distribution of their goods and services in connection with the unauthorized use of PAIR and HOSTPAIR and the Facebook and Twitter usernames @hostpair and Defendant's unfair methods of competition as alleged herein;

6.     That, a copy of this Order be delivered to Facebook and Twitter and that Defendant take all necessary steps to direct Facebook and Twitter to permanently suspend the username @hostpair in accordance with Facebook and Twitter's Rules, respectively.

7.     That Plaintiff recover its damages sustained as a result of Defendant's dilution, unfair competition and infringement of Plaintiff's marks;

8.     That Plaintiff be awarded three times Defendant's profits or three times Plaintiff's damages, whichever is greater, together with its reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b);

9.     That Plaintiff be awarded statutory damages pursuant to the provisions of 15 U.S.C. § 1117(d);

10.    That Plaintiff recover the costs of this action; and

11.    That Plaintiff be granted such other and further relief as the Court deems just and proper.

/

/

Respectfully submitted,


Dated: <u>November 21, 2016</u>


<u>/s/ Stanley D. Ference III</u>
Stanley D. Ference III
Pa. ID No. 59899


<u>/s/ Brian Samuel Malkin</u>
Brian Samuel Malkin
Pa. ID No. 70448

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone

Attorneys for Plaintiff
   pair Networks, Inc.

**LISTING OF EXHIBITS**

Exhibit 1 ................................ PublicDomainResistry Agreement

Exhibit 2 ................................ Appendix C PublicDomainRegistry Agreement

Exhibit 3 ................................ ICANN Dispute Resolution Policy

Exhibit 4 ................................ Twitter Rules and Trademark Policy

Exhibit 5 ................................ Facebook Rules and Trademark Policy

Exhibit 6 ................................ U.S. Trademark Reg. No. 2,172,950

Exhibit 7 ................................ U.S. Trademark Reg. No. 2,490,582

Exhibit 8 ................................ U.S. Trademark Reg. No. 2,527,469

Exhibit 9 ................................ U.S. Trademark Reg. No. 2,597,075

Exhibit 10 ............................. U.S. Trademark Reg. No. 3,366,746

Exhibit 11 ............................. U.S. Trademark Reg. No. 3,410,595

Exhibit 12 ............................. U.S. Trademark Reg. No. 3,587,926

Exhibit 13 ............................. U.S. Trademark Reg. No. 3,752,227

Exhibit 14 ............................. U.S. Trademark Reg. No. 2,822,208

Exhibit 15 ............................. Print Out from *cafepress.com* for "pair Networks, Inc.'s items"

Exhibit 16 ............................. October 8, 2010 Judgment, *Pair Networks, Inc. vs. Joaquim Rodrigues,* Civil Action No. 2010-01122 (W.D. Pa. 2010)

Exhibit 17 ............................. July 21, 2000 Judgment, *pair Networks, Inc. v PEAR.NET* Civil Action No. 2000-301-A (.E.D. Va. 2000)

Exhibit 18 ............................. December 9, 1999 Judgment, *pair Networks, Inc. v. Shiloh Jennings, d/b/a PAIRNET WEB HOSTING.* (W.D. Pa. 1999)

Exhibit 19 ............................. February 7, 2013 Judgment, *pair Networks, Inc. v Lim Cheng Soon and Richerd Chan* (W.D. Pa. 2013)

Exhibit 20 ............................. April 24, 2012 report from the United States Patent and Trademark Office Trademark Electronic Search System (TESS)

Exhibit 21 ............................. *pair Networks, Inc. v Lanish Enterprises Limited* (Opposition No. 91178438), decision filed June 18, 2008

Exhibit 22 ............................. April 20, 2012 *WHOIS* record for hostpair.com

Exhibit 23 ............................. November 14, 2012 printout of the home page associated with hostpair.com

Exhibit 24 ............................. July 7, 2016 cease and desist letter